1   Michael A. McGill, SBN 231613
2   mcgill@policeattorney.com
    Christopher L. Gaspard, SBN 275763
3   chris@policeattorney.com
    Jeremy D. Jass, SBN 279466
4   jeremy@policeattorney.com
5   LACKIE, DAMMEIER & MCGILL APC
    367 North Second Avenue
6   Upland, California  91786
7   Telephone: (909) 985-4003
    Facsimile: (909) 985-3299
8



FILED - SOUTHERN DIVISION
CLERK, U.S. DISTRICT COURT

APR 1 6 2012

CENTRAL DISTRICT OF CALIFORNIA
BY                          DEPUTY

9
    Attorneys for Plaintiff,
10  DAVID VANGSNESS

11              UNITED STATES DISTRICT COURT
12              CENTRAL DISTRICT OF CALIFORNIA
13

14  DAVID VANGSNESS;                    Case No. SACV12-212 CJC (ANx)
15
               Plaintiffs,                      FIRST AMENDED
16                                      COMPLAINT FOR DAMAGES
17        v.                            AND INJUNCTIVE RELIEF FOR
                                        VIOLATION OF INDIVIDUAL
18  CITY OF ANAHEIM; ANAHEIM            CIVIL RIGHTS AND
19  POLICE DEPARTMENT; JOHN             LIBERTIES WITH
    WELTER, individually and as Chief of SUPPLEMENTAL STATE LAW
20  Police for the Anaheim Police        CLAIMS
21  Department; CRAIG HUNTER,
    individually and as Deputy Chief of  DEMAND FOR JURY TRIAL
22  Police for the Anaheim Police
23  Department; JOE VARGAS, individually
    and as Captain for the Anaheim Police
24  Department; CHARLES O'CONNOR,
25  individually and as Captain for the
    Anaheim Police Department and DOES 1
26  through 10,
27
28             Defendants.

                              1

FIRST AMENDED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

LACKIE, DAMMEIER & MCGILL
A PROFESSIONAL CORPORATION

LACKIE, DAMMEIER & McGILL
A PROFESSIONAL CORPORATION

## I.

## PREFATORY

1.      This is an action for damages and injunctive relief for personal injury suffered by the Plaintiff as a result of wrongful retaliation for the lawful exercise of individual civil rights and liberties of free expression and speech.

## II.

## JURISDICTION AND VENUE

2.      Plaintiff's action is authorized by 42 U.S.C. §1983, which provides for redress for the deprivation under color of state law of rights secured by the Constitution and the laws of the United States. Jurisdiction is conferred on this Court by 28 U.S.C. §1343(3), providing for jurisdiction in this Court of suits authorized by 42 U.S.C. §1983 to redress the deprivation under color of state law of any right, privilege, or immunity secured by the Constitution of the United States, and by 28 U.S.C. §1343(4), providing for the protection of civil rights. Federal supplemental jurisdiction over the state claims is conferred by 28 U.S.C. § 1367.  This Court has authority to provide declaratory and injunctive relief in this case pursuant to 28 U.S.C. §§2201 and 2202. Venue is proper in the Central District of California in that the wrongs alleged herein occurred within the County of Orange, within the Central District.

## III.

## PARTIES

3.      Defendant, CITY OF ANAHEIM ("the City"), is a municipality organized and existing under the laws of the State of California and wholly located within the State of California, County of Orange. The Anaheim Police Department ("the Department") is an operating department of the City. At all relevant times mentioned in this complaint, the City delegated its final policy-making and decision-making authority to Defendants John Welter, Craig Hunter,

FIRST AMENDED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

1  Joe Vargas, and Charles O'Connor. The City adopted and ratified each of the
2  decisions of Welter, Hunter, Vargas, and O'Connor as alleged herein as its own
3  policies, customs, practices or decisions, as if the same had been promulgated
4  directly by the City.

5      4.     Defendant John Welter ("Welter") is the chief of police for the
6  Anaheim Police Department. He maintained this position at all times relevant to
7  these claims. In doing the things alleged herein, Welter acted under color of state
8  law, within the course and scope of his employment, and as an official policy-
9  maker for the City. As chief of police, Welter is vested with policy-making
10 authority over actions such as the ones at issue in this Complaint.

11     5.     Defendant Craig Hunter ("Hunter") is the deputy chief of police for
12 the Anaheim Police Department. He maintained this position at all times relevant
13 to these claims. In doing the things alleged herein, Hunter acted under color of
14 state law, within the course and scope of his employment, and as an official
15 policy-maker for the City. As deputy chief of police, Hunter is vested with policy-
16 making authority over actions such as the ones at issue in this Complaint.

17     6.     Defendant Joe Vargas ("Vargas") is currently retired from the
18 Anaheim Police Department. However, he maintained the position of Captain of
19 the Anaheim Police Department at all times relevant to these claims. In doing the
20 things alleged herein, Vargas acted under color of state law, within the course and
21 scope of his employment, and as an official policy-maker for the City. As Captain,
22 Vargas is vested with policy-making authority over actions such as the ones at
23 issue in this Complaint.

24     7.     Defendant Charles O'Connor ("O'Connor") is currently retired from
25 the Anaheim Police Department. However, he maintained the position of Captain
26 of the Anaheim Police Department at all times relevant to these claims. In doing
27 the things alleged herein, O'Connor acted under color of state law, within the
28 course and scope of his employment, and as an official policy-maker for the City.

LACKIE, DAMMEIER & McGILL
A PROFESSIONAL CORPORATION

3

As Captain, O'Connor is vested with policy-making authority over actions such as the ones at issue in this Complaint.

8.    Plaintiff David Vangsness ("Plaintiff") is, and was at all times relevant to this complaint, employed by Defendant City of Anaheim Police Department in the capacity of lieutenant, and as such is entitled to the benefits and protections of the Public Safety Officers Procedural Bill of Rights ("POBR") Act, Government Code section 3300 et seq. Plaintiff's home address is confidential under Penal Code §§ 146e and 832.7, and Vehicle Code §1808.4(a)(11).

9.    The true names and capacities of the Defendants named herein as DOES 1 through 10, whether individual, government, corporate, associate, or otherwise, are unknown to Plaintiff who therefore sues such Defendants by such fictitious names pursuant to the California Code of Civil Procedure, Section 474 et. seq.

10.    Defendant DOES 1 through 10, were at all times alleged herein, employers, employees, agents, partners, servants and joint venturers of Defendants and each of them and in some capacity were responsible for the wrongful acts herein complained of. Plaintiff is informed and believes that the DOE Defendants herein are California residents and will amend this Complaint to show their true names and capacities once they have been ascertained.

11.    Each and all of the acts of the Defendants as alleged herein were done by Defendants, their agents, servants, and employees, and each of them as individuals and under the color and pretense of the statutes, ordinances, regulations, customs and usages of the State of California, and under the authority of their employment with full knowledge and approval of their superiors as agents.

## IV.

## FACTS COMMON TO ALL COUNTS

12.    All facts stated herein in any one section are incorporated, reiterated,

4

LACKIE, DAMMEIER & McGILL
A PROFESSIONAL CORPORATION

1 │ and realleged in every other section.

2 │     13.    In or about February 8, 1988, Plaintiff was hired by Defendant City

3 │ of Anaheim as a police officer. While at all times employed by the Department as

4 │ a police officer, Plaintiff performed his duties competently and without difficulty.

5 │     14.    In or about 1997, Plaintiff was promoted to the rank of sergeant.

6 │ While at all times employed by the Department as a sergeant, Plaintiff performed

7 │ his duties competently and without difficulty.

8 │     15.    In or about 2003, Plaintiff served on the SWAT team in the Special

9 │ Tactics Detail ("STD") as a team leader. While at all times serving the City as a

10 │ STD team leader, Plaintiff performed his STD duties competently and without

11 │ difficulty.

12 │     16.    In or about 2004, Plaintiff was promoted to the rank of lieutenant.

13 │ While at all times employed by the Department as a lieutenant, Plaintiff

14 │ performed his duties competently and without difficulty.

15 │     17.    Sometime after being promoted to lieutenant, Plaintiff was selected

16 │ to be the back-up commander of the STD team. As such, the full time commander

17 │ of the STD team, Lieutenant Tim Miller, would call Plaintiff as the primary back-

18 │ up commander whenever Lieutenant Miller was unavailable for STD team

19 │ callouts.  Plaintiff was compensated with overtime pay whenever he responded to

20 │ an after-hours STD callout.

21 │     18.    In or about the early part of 2008, Plaintiff was selected for the Major

22 │ Incident/Officer Involved Shooting team (OIS team). The OIS team operated on a

23 │ rotational on-call basis, and responded to major incidents. The team was

24 │ responsible for conducting the internal investigations of major incidents and

25 │ writing the final reports.

26 │     19.    In or about October 2008, Plaintiff was assigned to command the

27 │ Homicide Investigations Unit. Plaintiff stepped down from the OIS team upon

28 │ being assigned to command the Homicide Investigations Unit because the new

LACKIE, DAMMEIER & MCGILL
A PROFESSIONAL CORPORATION

FIRST AMENDED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

1   assignment required Plaintiff to respond to all incidents in the role of overseeing
2   the criminal investigation. While at all times in the position of commander of the
3   Homicide Investigations Unit, Plaintiff performed his duties competently and
4   without difficulty.

5        20.    In or about October 2008, Plaintiff was assigned as commander of
6   the Investigations Bureau. While at all times in the position of commander of the
7   Investigations Bureau, Plaintiff performed his duties competently and without
8   difficulty.

9        21.    The Anaheim Police Department utilizes a chain of command
10   structure, whereby orders from superior officers are handed down through the
11   chain of command to subordinate officers.

12        22.    In or about September of 2009, the Orange County District Attorney
13   Tony Rackauckas notified Defendant Hunter that a firearm in Rackauckas'
14   possession was missing.

15        23.    Based on information and belief, in or about September or October
16   2009 Defendant Hunter had aspirations to become elected to the position of
17   Sheriff of Orange County; and would benefit from the support of the Orange
18   County District Attorney Tony Rackaukas. Defendant Hunter did in fact announce
19   his candidacy for Sheriff of Orange County on or about November 17, 2009.
20   Furthermore, Defendant Hunter's wife is employed as an investigator for the
21   Orange County District Attorney's office. Thus, a conflict of interest exists
22   regarding Defendant Hunter's involvement in any investigation concerning the
23   Orange County District Attorney Tony Rackauckas.

24        24.    Based on information and belief, in or about September or October
25   2009, Defendant Hunter directly contacted Sergeant Lozeau, a sergeant under
26   Plaintiff's command, with the request to investigate Rackauckas' missing firearm.
27   In doing so, Defendant Hunter disregarded the Anaheim Police Department's
28   usual practice of adhering to the chain of command structure.  Moreover,

LACKIE, DAMMEIER & McGILL
A PROFESSIONAL CORPORATION

6

1  Defendant Hunter advised Sergeant Lozeau to contact Rackauckas' chief
2  investigator Mike Majors to take the report of the missing firearm.

3      25.    In or about October 6, 2009, Sergeant Lozeau alerted Plaintiff to the
4  case involving Rackauckas' missing firearm. Sergeant Lozeau stated to Plaintiff
5  that Defendant Hunter had directly contacted Sergeant Lozeau to investigate the
6  case. Plaintiff became alarmed with the fact that Defendant Hunter would bypass
7  the chain of command and have a report taken from a third party such as Mike
8  Majors.

9      26.    On or about October 7, 2009, Plaintiff reviewed Sergeant Lozeau's
10  report on Rackauckas' missing firearm and learned that the missing firearm was
11  registered to Don Blankenship ("Blankenship"), Rackauckas' former Chief
12  Investigator, and that Blankenship had loaned the firearm to Rackauckas.

13      27.    On or about October 7, 2009, Plaintiff briefed his commanding
14  officer, Captain Joe Reiss, on the matter. Captain Reiss asked Plaintiff why
15  Defendant Hunter bypassed the chain of command; Plaintiff's response was that
16  he didn't know. In reference to the matter, Captain Reiss made the statement, "it
17  stinks."

18      28.    On or about October 13, 2009, Captain Reiss stated to Plaintiff that
19  Captain Reiss brought up the Rackauckas matter at a staff meeting where
20  Defendant Welter, Defendant Hunter, Defendant Vargas, Defendant O'Connor
21  and all of the captains of the Anaheim Police Department were present. Captain
22  Reiss relayed to Plaintiff that at the meeting Defendant Welter said it would be ok
23  to get a statement from Rackauckas regarding the missing firearm, at which point
24  Defendant Hunter said in the meeting, "that was not the agreement." Captain
25  Reiss stated to Plaintiff that Defendant Hunter was adamant about not speaking
26  directly with Rackauckas.

27      29.    On or about October 14, 2009, Plaintiff sent Captain Reiss an email
28  with information on the state firearm statutes applicable to the Rackauckas case

LACKIE, DAMMEIER & MCGILL
A PROFESSIONAL CORPORATION

7

FIRST AMENDED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

1   including language from the DOJ website: "It is unlawful for a person who is not

2   a licensed firearms dealer pursuant to Penal Code section 12071, to sell, loan, or

3   otherwise transfer a firearm to a non-licensed person unless the sale, loan, or

4   transfer is completed through a licensed firearm dealer. (Penal Code §§ 12071,

5   12072, 12802.)" Captain Reiss responded to this email with the single word,

6   "Nice."

7        30.    On or about October 15, 2009, Plaintiff asked Captain Reiss for an

8   update on any decision to allow an interview with Rackauckas, to which Captain

9   Reiss responded that there was no word from Defendant Hunter yet. Plaintiff then

10  advised Captain Reiss that if there was an unrecorded transfer of a firearm, there

11  was likely a public offense, information that would certainly be of interest to the

12  state Attorney General's Office ("AG").  Captain Reiss warned Plaintiff, "You

13  don't want to ring that bell."

14       31.    On or about October 19, 2009, Plaintiff briefed Captain Reiss on the

15  firearms transfer laws related to the Rackauckas case and provided Captain Reiss

16  copies of Penal Code §12072, and §12801.  Captain Reiss informed Plaintiff that

17  Rackauckas agreed to write a statement of facts and send it to Sergeant Lozeau via

18  fax within twenty four hours.

19       32.    On or about October 22, 2009, the Anaheim Police Department

20  received a signed statement from Rackauckas via fax.  The fax from Rachauckas

21  stated, in pertinent part:

22          In 2002 Don Blankenship provided me a handgun for safekeeping. The
            weapon was kept in my home in Irvine and housed in a green canvas
23          bag. I moved from Irvine to Anaheim on December 31, 2008. While
            preparing for the move, I was reminded that I still had his weapon when,
24          while packing for the move, I observed the handgun in the green bag. On
25          September 13, 2009 I retrieved the bag in order to return the weapon to
            Mr. Blankenship. When I opened the bag I saw that the weapon was
26          gone.
27

28  Later that same day Plaintiff informed Captain Reiss of the contents of

LACKIE, DAMMEIER & McGILL
A PROFESSIONAL CORPORATION

8

Rackauckas' statement. Plaintiff asked Captain Reiss, "Are you satisfied with the fax? Am I to do anything else?" Captiain Reiss responded, "Yes and no."

33.     On or about October 29, 2009, Plaintiff called Captain Reiss expressing concerns about the public offense committed by Rackauckas, specifically that Plaintiff was inclined to discuss the incident with the AG. Plaintiff requested to meet with Defendant Hunter regarding the Rackauckas matter.

34.     On or about November 13, 2009, Plaintiff met with Captain Reiss and Defendant Hunter in Defendant Hunter's office. Plaintiff expressed concerns about the case not being handled properly. First, Plaintiff expressed that a report should not be taken from a third party (Mike Majors). Defendant Hunter's reply was, "It's a file case," and that Plaintiff was, "making a mountain out of a molehill." Defendant Hunter asked to see Rackauckas' faxed statement, which Plaintiff handed to Defendant Hunter. After reading Rackauckas' statement Defendant Hunter said the facts in the statement were sufficient for a report and he saw no need to do anything more with it. However, Defendant Hunter also said he didn't want this case treated differently than any other. Plaintiff again mentioned informing the AG of the incident. Defendant Hunter responded by suggesting the Anaheim City Prosecutor review the offense; Captain Reiss then immediately suggested the Anaheim City Attorney review the offense. Defendant Hunter and Captain Reiss agreed that interviewing Blankenship may be appropriate, but that Sergeant Lozeau should conduct the interview rather than Plaintiff. Captain Reiss then told Plaintiff that Blankenship was not to be asked any questions about the transfer of the firearm or any other potential law violations, limiting the interview to Blankenship's knowledge of the fact that the gun was missing and verification of the serial number.

35.     On or about November 13, 2009, Plaintiff met again with Captain Reiss to discuss the interview of Blankenship. Plaintiff again articulated the need

LACKIE, DAMMEIER & MCGILL
A PROFESSIONAL CORPORATION

FIRST AMENDED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

1   to let the AG know of the public offense, regardless of Blankenship's statement.

2   Captain Reiss repeated that Sergeant Lozeau was not to ask about the transfer.

3       36.    On or about November 13, 2009, Plaintiff sent an email to Sergeant

4   Lozeau, with a copy sent to Captain Reiss, requesting Sergeant Lozeau interview

5   Blankenship to ensure that Blankenship was aware the firearm was missing,

6   confirm which firearms it is, and check the serial number.

7       37.    On or about December 9, 2009, Sergeant Lozeau interviewed

8   Blankenship. Blankenship told Sergeant Lozeau that Blankenship had given

9   Rackauckas a firearm sometime in 2000 "for protection." According to

10  Blankenship, the Orange County District Attorney's office was involved in

11  prosecuting members of the Mexican Mafia at that time, and Rackauckas had

12  received threats from the Mexican Mafia. So, Blankenship loaned Rackauckas the

13  firearm to carry for personal protection.  This information contradicted

14  Rackauckas' faxed statement that he was holding the firearm for "safekeeping."

15  Blankenship further stated to Sergeant Lozeau that Rackauckas never returned the

16  firearm and Blankenship was aware that the firearm was now missing.

17  Blankenship was unable to recall the serial number of the missing firearm.

18      38.    On or about December 15, 2009, Plaintiff spoke with Senior

19  Assistant Attorney General Gary Schons ("Schons") by telephone and discussed

20  the Rackauckas incident.  In speaking out to the AG's office, Plaintiff was not

21  acting pursuant to his official duties; in fact, as discussed below, Plaintiff was

22  punished by Defendants for doing so. Schons agreed to review the Rackauckas

23  case, but advised Plaintiff that criminal charges against Rackauckas would likely

24  not be filed because the statute of limitations had run. Plaintiff's conversation with

25  Schons was not made pursuant to any official job duties for which Plaintiff is

26  paid.

27      39.    On or about December 18, 2009, Sergeant Lozeau submitted a

28  supplemental report containing Mr. Blankenship's statement.

LACKIE, DAMMEIER & McGILL
A PROFESSIONAL CORPORATION

10

FIRST AMENDED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

40.     On or about December 21, 2009, Plaintiff drafted a letter to Schons detailing the public offense committed by Rackauckas, and mailed the letter to Schons. In drafting and mailing the letter to Schons, Plaintiff was not acting pursuant to any official job duties for which he was paid. Indeed, Plaintiff was disciplined by Defendants for drafting and mailing the letter to Schons.

41.     On or about December 24, 2009, Captain Reiss retired and Defendant Vargas assumed command of the Investigations Division.

42.     On or about December 29, 2009, Plaintiff attended a staff meeting with Defendant Vargas, Lieutenant Harvey, and Lieutenant Cyprien. During the meeting, Defendant Vargas announced that the division had been reorganized and that Plaintiff had been reassigned as the Crimes Property Commander. Based on this reassignment, Plaintiff lost oversight of the Robbery and Homicide units. After the meeting, Plaintiff discussed the Rackauckas incident with Defendant Vargas, including Plaintiff's contact with the AG. Plaintiff asked Defendant Vargas if Plaintiff's reassignment was punishment for his having spoken out to the AG. Defendant Vargas told Plaintiff that the reassignment was not punishment.

43.     On or about December 31, 2009, Plaintiff was summoned to Defendant Vargas' office and was asked to bring the report number for the Rackauckas case and the name of the attorney at the AG's that Plaintiff contacted. Plaintiff was met in Defendant Vargas' office by Defendant Vargas and Defendant O'Connor. Defendant Vargas asked Plaintiff who he spoke with at the AG and whether Plaintiff considered informing the Anaheim City Prosecutor's Office of Rackauckas' offense. Defendant Vargas expressed concern that Plaintiff hadn't notified someone within the Department before reporting the offense to the AG. Plaintiff responded by recounting the November 13, 2009 meeting he had with Captain Reiss and Defendant Hunter. Defendant Vargas then ended the meeting with Plaintiff by stating, "Ok, thanks, I think I have everything I need."

44.     On or about January 7, 2010, Plaintiff received the response letter

11

from the AG indicating that the AG had reviewed the information and would not be making a criminal prosecution. The letter cited Penal Code § 12072(d) and indicated that since the "transfer or 'loan' of the .357 revolver occurred on or about the year 2000, the applicable one year statute of limitation has run."

45. On or about January 7, 2010, Plaintiff asked Defendant Vargas to be reinstated onto the OIS team since he would no longer be responding to major incidents in a role overseeing the criminal investigation. Defendant Vargas informed Plaintiff that Defendant Welter and Defendant Hunter were concerned that Plaintiff didn't trust them to make the right decisions so they didn't have the confidence in Plaintiff to be back on the OIS team. Defendant Vargas said this stemmed from Plaintiff's informing the AG of Rackauckas' firearm offense. Based on Vargas' statements, it is clear that Defendants Welter and Hunter took part in the decision to pass over Plaintiff for the OIS team position.

46. Plaintiff asked Lieutenant Miller and Lieutenant Harvey, both members of the OIS team, if they could press Defendant Vargas for Plaintiff's reinstatement on the OIS team. Both Lieutenant Miller and Lieutenant Harvey brought the issue of Plaintiff's reinstatement on the OIS team up at an OIS team meeting. Lieutenant Miller and Lieutenant Harvey indicated to Plaintiff that Defendant Vargas became uncomfortable with the issue stating that the entire command staff would have to provide input and that it was not likely that Plaintiff would be reinstated to the OIS team.

47. Plaintiff again asked Defendant Vargas about being reinstated to the OIS team. Defendant Vargas claimed that he wanted to give some less experienced lieutenants the opportunity.

48. Based on information and belief, the Anaheim Police Department has a long standing practice of including all lieutenants in the promotional panel tasked with deciding which officers to promote to sergeant.

49. In or about February 2010, the Anaheim Police Department

FIRST AMENDED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

LACKIE, DAMMEIER & McGILL
A PROFESSIONAL CORPORATION

1  conducted annual sergeants promotional testing. Plaintiff made a request to
2  Defendant Vargas to participate as a member of the promotional panel. His
3  request was denied by Defendant Vargas who indicated the Chief's Executive
4  Committee had chosen the panelists.

5       50.   On or about February 26, 2010, Lieutenant Miller, commander of the
6  STD team, asked Plaintiff to cover for Lieutenant Miller as the commander of the
7  STD team during the first week in March 2010 while Lieutenant Miller was out of
8  town. Plaintiff agreed to cover as commander of the STD team while Lieutenant
9  Miller was out of town, and Lieutenant Miller sent a courtesy email to the staff
10  notifying everyone to call Plaintiff in the event of a STD callout. A short time
11  later that same day Lieutenant Miller called Plaintiff to inform him that Defendant
12  O'Connor directed Lieutenant Miller to use Lieutenant Gallagher to cover as STD
13  commander during the first week of March 2010, without providing a reason.
14  Lieutenant Miller then sent a second email to the staff indicating that Lieutenant
15  Gallagher would cover as commander of the STD team during the first week of
16  March 2010.

17       51.   On or about March 4, 2010, Plaintiff was summoned to Defendant
18  Vargas' office, where Defendant Vargas and Captain Aquino were waiting for
19  Plaintiff. During this meeting Defendant Vargas issued Plaintiff a written
20  reprimand because Plaintiff "unilaterally decided" to inform the AG of
21  Rackauckas' firearm offense. Plaintiff asked how Defendant Vargas and Captain
22  Aquino could issue a written reprimand without interviewing Plaintiff or
23  attempting to ascertain all of the circumstances surrounding Plaintiff's contact
24  with the AG. Captain Aquino admitted that he had a very limited knowledge of
25  the details of the matter. Plaintiff protested that he did the right thing by telling the
26  AG of Rackauckas' offense. Both Defendant Vargas and Captain Aquino agreed
27  that Plaintiff had "done the right thing" by telling the AG of Rackauckas' offense.

28       52.   On or about March 8, 2010, Plaintiff was summoned to Defendant

LACKIE, DAMMEIER & McGILL
A PROFESSIONAL CORPORATION

13

1    O'Connor's office, where Defendant O'Connor and Defendant Vargas were

2    waiting for Plaintiff. Defendant O'Connor advised Plaintiff that as a result of a

3    lack in confidence in Plaintiff's decision making abilities Plaintiff was being

4    relieved of his STD duties. Plaintiff requested this notification in writing, to which

5    Defendant O'Connor offered to send an email. A short time later Plaintiff received

6    an email from Defendant O'Connor stating, "Dave, per our conversation today,

7    you are relieved of your STD duties effective immediately. You should turn in any

8    STD equipment you have to me or Lt. Tim Miller. Dave, this email was sent to

9    you per you request." Plaintiff sent a reply to Defendant O'Connor's email stating,

10   "Captain, Thank you, but it is the 'why' that I would like to have documented.

11   Your statement as I noted it was: 'As a result of a lack of confidence in you

12   decision-making abilities, you are being relieved of your duties in STD.' Please

13   correct me if that is wrong, and confirm this is related to the 'decision-making'

14   abilities described by Captain Vargas in my Written Reprimand of March 4, 2010.

15   I am not aware of any other matters if there are any. Thank you." Defendant

16   O'Connor never responded to Plaintiff's reply email.

17       53.    On or about March 15, 2010, Plaintiff appealed the written reprimand

18   of March 4, 2010 by filing a Response to Written Reprimand. Plaintiff's Response

19   to Written Reprimand complied with the Grievance Procedure outlined in Rule 31

20   of the City of Anaheim Personnel Rules Covering Management, Confidential and

21   Non-Represented Part Time Employees.

22       54.    On or about March 18, 2010, Schons sent Defendant Welter a letter

23   communicating to Defendant Welter that Schons is "deeply troubled by the

24   written reprimand…given to Lieutenant David Vangsness." Schons states in the

25   letter that it is clear to him that the reprimand was prompted by Plaintiff's

26   informing the AG of the Rackauckas' firearm offense. Schons then defended

27   Plaintiff by stating that Plaintiff was "absolutely correct" in telling the AG of

28   Rackauckas' offense. Schons continued, "What is troubling about the reprimand is

LACKIE, DAMMEIER & McGILL
A PROFESSIONAL CORPORATION

14

1 that Lt. Vangsness attempted to and did do the right thing…For his effort, he got
2 reprimanded (and had other duties stripped from him)." Schons then ended the
3 letter by asking Defendant Welter to reconsider the actions taken against Plaintiff.
4 However, Defendant Welter disregarded Schons' letter.

5      55.    On or about April 15, 2010, Plaintiff met with Defendant Welter and
6 Anaheim City Attorney Cristina Talley as part of the City's grievance process.

7      56.    On or about April 23, 2010, Defendant Welter issued a Notice of
8 Decision to Plaintiff, wherein Defendant Welter wrongfully sustained the written
9 reprimand Plaintiff received on March 4, 2010.

10      57.    On or about March 4, 2011, Defendants transferred Plaintiff from the
11 Detective Bureau to the Detention Facility, a less desirable position within the
12 Anaheim Police Department.

13      58.    On or about August 4, 2011, and or August 5, 2011, the Orange
14 County Register published an article entitled, "The DA, the lost revolver and the
15 lieutenant." The article makes public the circumstances of Rackauckas' offense,
16 Plaintiff's actions in informing the AG of Rackauckas' offense, and the adverse
17 employment action that Plaintiff suffered as a result of his contacting the AG.
18 Referring to Plaintiff the article states "the only person punished was the
19 lieutenant who tried to do the right thing."

20      59.    Based on information and belief, on or about September 8, 2011,
21 Chief Welter held a departmental staff meeting in the patrol briefing room to
22 discuss departmental issues. Present at that meeting was Chief Welter, Deputy
23 Chief Hunter, Captain Aquino, Captain Brewer, Captain Conklin, Captain
24 Quezada, 12 Lieutenants, 2 Sergeants, and 6 civilian Anaheim Police Department
25 staff. During this meeting, Chief Welter and Deputy Chief Hunter brought up and
26 discussed confidential facts in Plaintiff's personnel file. Chief Welter commented
27 on the level of discipline Plaintiff received for reaching out to the AG. Chief
28 Welter's comments implied that Plaintiff had other negative marks in his

LACKIE, DAMMEIER & McGILL
A PROFESSIONAL CORPORATION

FIRST AMENDED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

personnel file by making the statement that if Plaintiff opened his entire personnel file then everyone in the department would understand the level of discipline that Plaintiff was given. Deputy Chief Hunter accused Plaintiff of lying by stating that Plaintiff provided misinformation to the AG. The disclosures made by Chief Welter and Deputy Chief Hunter violated Plaintiff's right to privacy and Plaintiff's right to maintain confidentiality in his police personnel file.

60.  During the departmental staff meeting on or about September 8, 2011, Chief Welter commented on Plaintiff's report to the AG. Welter said, "We wanted to get the gun in the system. We didn't want to conduct a criminal investigation on the District Attorney." Chief Welter further stated, "Dave Vangsness decides on his own to file a report to the sitting Attorney General." These statements made by Welter confirm that Plaintiff's report to the AG was not made pursuant to any official job duties of Plaintiff. Welter, as the chief of police, makes it clear that the Department did not intend to investigate Rackauckas and that Plaintiff was acting "on his own" in his contact with the AG.

61.  Plaintiff continues to be ostracized and retaliated against by Defendants for legitimately exercising his constitutional rights.

62.  Based on information and belief, the Anaheim Police Department adheres to a practice of allowing a senior lieutenant to hold the position of acting captain while the permanent captain is unable to perform captain's duties. Since January of 2010 there have been multiple instances where the permanent captain has been unable to perform captain's duties. However, despite Plaintiff's qualifications and seniority, a lesser qualified lieutenant has been chosen to fill the acting captain position while the permanent captain is unable to perform captain's duties.

63.  In or about January 2012, Lieutenant Julian Harvey, the coordinating officer of the OIS team, requested two new lieutenants be assigned to the OIS team. Lieutenant Harvey specifically requested that Plaintiff be assigned to fill

LACKIE, DAMMEIER & McGILL
A PROFESSIONAL CORPORATION

16

FIRST AMENDED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

1  one of the two available spots on the OIS team. Captain Belinda Brewer,

2  commander of the OIS team, presented Lieutenant Harvey's request to the Chief's

3  Executive Committee. However, Plaintiff was passed over for the assignment to

4  the OIS team, and two lesser qualified lieutenants were placed on the OIS team.

5  Based on information and belief, the Chief's Executive Committee consists of

6  Defendant Welter, Defendant Hunter, and all four captains of the Anaheim Police

7  Department. Based on information and belief, the Chief's Executive Committee

8  denied Plaintiff the position on the OIS team at the direction of Defendant Welter

9  and Defendant Hunter. Refusing Plaintiff a position on the OIS team adversely

10  effects Plaintiff as it hinders Plaintiff's future promotability within the department

11  and prevents Plaintiff from overtime compensation for after hours call outs.

12      64.    Plaintiff exhausted all administrative remedies to compel the relief

13  sought herein.  Plaintiff filed a government claim with the City of Anaheim,

14  which was denied on March 9, 2012.

15                              **V.**

16                            **CLAIMS**

17                          <u>**COUNT ONE**</u>

18                         *42 U.S.C. 1983*

19      *Against All Defendants Except the Anaheim Police Department*

20      65.    Plaintiff re-alleges each and every preceding paragraph as though set

21  forth in full here.

22      66.    As a direct result of Plaintiff exercising his First Amendment rights,

23  Defendants took the aforementioned adverse actions against Plaintiff.  Absent said

24  protected speech, Plaintiff would not have been reprimanded, removed from

25  coveted positions, transferred to less desirable assignments, denied assignments,

26  suffered adverse employment actions, and would not have been injured.

27      67.    The various acts of intimidation, reprisal, retaliation, suppression

28  and/or restraint exercised by Defendants against Plaintiff has created a chilling

LACKIE, DAMMEIER & McGILL
A PROFESSIONAL CORPORATION

17

FIRST AMENDED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

1   effect on his legitimate exercise of speech by creating fear, hesitation, hostility
2   and other destructive responses.

3        68.   In doing the things alleged herein, Defendants, and each of them,
4   violated the rights of Plaintiff under the First and Fourteenth Amendments to the
5   United States Constitution to free expression.  Specifically, Defendants have taken
6   the aforementioned action against Plaintiff in direct retaliation for, and in response
7   to the protected activities of Plaintiff.

8        69.   The acts and omissions of Defendants, and each of them, were done
9   by Defendants under color of state law and as policy making authorities to which
10  Defendant City delegated its governing powers in the subject matter areas in
11  which these policies were promulgated or decisions taken or customs and
12  practices followed. The acts and omissions described above were taken by the
13  City's official policy makers as members charged with such responsibility.  It was
14  or should have been plainly obvious to any reasonable policy making official of
15  the City that the acts and omissions of Defendants as alleged herein, taking singly
16  or in conjunction, directly violated and continued to violate Plaintiff's clearly
17  established constitutional and statutory rights. In doing the things alleged herein,
18  Defendants acted with malicious intent to violate Plaintiff's rights, or at least in
19  conscious, reckless, and callous disregard of Plaintiff's rights and to the injurious
20  consequences likely to result from a violation of said rights. General and special
21  damages are sought according to proof. Punitive damages are sought against the
22  individual defendants, according to proof.

23       70.   Plaintiff has no plain, speedy nor adequate remedy at law to prevent
24  future violations of his civil rights, and therefore seeks extraordinary relief in the
25  form of permanent injunctions, as hereafter described. Damages alone are
26  inadequate and injunctive relief is sought to command Defendants to place
27  Plaintiff in the position he would have been in, absent the unlawful conduct of
28  Defendants.

LACKIE, DAMMEIER & McGILL
A PROFESSIONAL CORPORATION

18

## COUNT TWO

### *Retaliation – Labor Code § 1102.5*

*Against the City and the Anaheim Police Department*

71.     Plaintiff re-alleges each and every preceding paragraph as though set forth in full here.

72.     Labor Code section 1102.5 prohibits an employer, among other things, from retaliating against an employee for disclosing a violation of state or federal statute, or a violation or noncompliance with a state or federal rule or regulation.

73.     An employer who violates section 1102.5 may be ordered to reinstate the employee with backpay and benefits, and pay the employee's damages.

74.     As discussed above, Plaintiff disclosed a violation of state law by Rackauckas to the AG. Defendants retaliated against Plaintiff for the disclosure to the AG by reprimanding him, removing him from coveted positions, transferring him to less desirable assignments, and denying him assignments.

75.     Defendant's actions toward Plaintiff, regardless the pretext, were done in retaliation for said disclosures, and thus violate section 1102.5.  Therefore, Defendants are liable to Plaintiff for reinstatement, backpay with benefits, and damages.

**WHEREFORE,** Plaintiff prays for:

1.     General, compensatory, and special damages according to proof;

2.     Punitive damages against the individually named defendants only;

3.     Injunctive relief ordering Defendants

   a)     To immediately return Plaintiff to the position he would have been in had he not been subjected  to the adverse employment actions;

FIRST AMENDED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

LACKIE, DAMMEIER & MCGILL
A PROFESSIONAL CORPORATION

b)     To expunge any negative personnel documents provided by Defendants relating to the adverse actions that are the subject of this action; and

c)     To take any and all necessary and reasonable steps to remove the stigma and negative perception of Plaintiff;

4.    Attorney's fees as permitted by law;

5.    Costs of suit;

4.    Interest as provided by law; and

5.    Each other and further relief as the Court deems just and proper.

Dated:  April 11, 2012          LACKIE, DAMMEIER & MCGILL APC


Michael A. McGill, Esq.
Christopher L. Gaspard, Esq.
Jeremy D. Jass, Esq.
*Attorneys for Plaintiff,*
DAVID VANGSNESS

**DEMAND FOR TRIAL BY JURY**

Plaintiffs hereby demand a trial by jury.

Dated:  April 11, 2012          LACKIE, DAMMEIER & MCGILL APC


Michael A. McGill, Esq.
Christopher L. Gaspard, Esq.
Jeremy D. Jass, Esq.
*Attorneys for Plaintiff,*
DAVID VANGSNESS

LACKIE, DAMMEIER & MCGILL
A PROFESSIONAL CORPORATION

FIRST AMENDED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF